**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Regina M. Rodriguez**

Civil Action No. 19-cv-00510-RMR-MEH

OTTER PRODUCTS, LLC, and,
TREEFROG DEVELOPMENTS, INC.,

      Plaintiffs/Counter-Defendants,

v.

TRIPLENET PRICING INC.,

      Defendant/Counter-Claimant,

      and

TRIPLENET PRICING LLC,
ERIC SYPES, and
JOHN DOES 1-10, individually or as corporate/business entities,

      Defendants.

---

**OPINION AND ORDER**

---

This matter comes before the Court on the Motion for Partial Summary Judgment submitted by Plaintiffs/Counter-Defendants Otter Products and Treefrog Developments (collectively, "Otter"), ECF 41, filed on January 20, 2020. Defendants Triplenet Pricing, Inc., Triplenet Pricing, LLC, and John Does 1-10 (collectively, "Triplenet") filed an

opposition to the motion on February 7, 2020, at ECF 44. Otter filed a reply on February 21, 2020, at ECF 48.

Otter seeks summary judgment against Triplenet on Otter's trademark and unfair competition claims (Counts 1, 3, and 5) and its false advertising and deceptive trade practices claims (Counts 2 and 6). Otter also seeks summary judgement on all of Triplenet's counterclaims.

For the reasons stated herein, Otter's Motion for Partial Summary Judgment is **GRANTED.**

## I.   BACKGROUND[1]

Otter manufactures and sells mobile device, smartphone, and tablet cases and accessories under the OtterBox and LifeProof brands. ECF 41, ¶ 1. These brands are protected by registered trademarks. *Id.* Triplenet sells products bearing Otter Trademarks without Otter's authorization on the internet, including on Amazon. *Id.* ¶ 2. Otter implements a quality control program that applies to every authorized seller of Otter Products ("Authorized Sellers"). ECF 41-1, ¶ 9. These controls include, in part: storing and handling Otter Products in compliance with Otter instructions, and inspecting the products for defects, removing any Otter Products from inventory that are damaged, and

---

[1] The facts included refer, where possible, to those facts admitted to as undisputed by the parties. In its opposition to Otter's Motion, however, Triplenet responded to only 12 of Otter's 48 purportedly undisputed facts. In its own Statement of Additionally Disputed Facts, Triplenet failed to include factual citations for a majority of its statements. Based on a review of the opposition as a whole, however, all statements included herein appear to be undisputed, except where otherwise specified.

reporting those products to Otter. ECF 42-1, pp. 2-3, 8. Otter also requires all authorized sellers to be adhere to customer service standards, including familiarity with products, warranties, and return policies. *Id.* Otter also requires Authorized Sellers to respond to customer questions and concerns. *Id.* With some limited exceptions, Authorized Sellers who do not purchase Otter Products directly from Otter are only permitted to sell Otter Products online if they submit an application, pass Otter's vetting process, and obtain Otter's permission to sell on specific websites. *Id.* at pp. 2-3. Authorized Sellers who sell Otter Products on Amazon are also required to comply with additional quality controls, including that they must opt out of Amazon's "commingling" practice and apply tracking stickers to ensure that product orders are not fulfilled in a way that could result in a customer receiving products from another Amazon seller's stock. ECF 42-2, p. 6-7.

Otter provides a warranty (the "Otter Warranty") for Otter Products that are purchased from Otter or from an Authorized Seller ("Covered Products"). ECF 41-4. For a specified period, Otter will repair or replace Covered Products that have defects in manufacturing, materials, or workmanship. *Id.* The Otter Warranty does not cover products sold by Unauthorized Sellers (like Triplenet). ECF 42-6, p. 3.

Triplenet is not an Authorized Seller of Otter Products. ECF 41, ¶ 2. Triplenet sells Otter Products on the internet, including on Amazon, through a storefront called "Triplenet Pricing Inc." *Id.* Pursuant to the terms of the Otter Warranty, Otter Products sold by Triplenet are not covered by the Otter Warranty because Triplenet is not an Authorized Seller of Otter Products. ECF 42-6, p. 3. The listing of the Otter Products on the Triplenet

Amazon site states: "Includes OtterBox limited lifetime warranty (see website for details) and 100% authentic." ECF 1, ¶ 164; ECF 32, ¶ 164. The listing of the Otter Products on the Triplenet Amazon site also identify the products as "New." *Id.* ¶ 165. Pursuant to Amazon's policies, a "New" product listing comes with the "original manufacturer's warranty." *Id.*

Otter brought this action on February 20, 2019. Otter sues Triplenet for trademark infringement, false advertising, and unfair competition in violation of the Lanham Act, 15 U.S.C §§ 1114 and 1125, and for common law trademark infringement and unfair and deceptive business practices in violation of the Colorado Consumer Protection Act ("CCPA"), Colo. Rev. Stat. § 6-1-101 *et seq*. Otter alleges that Triplenet is selling non-genuine products bearing the Otter Trademarks. Otter argues that the products sold by Triplenet are materially different from genuine Otter Products because they do not come with the Otter Warranty. Otter alleges that Triplenet falsely advertises that the products they sell come with the Otter Warranty, and that this alleged misrepresentation causes confusion among consumers.

Triplenet has filed counterclaims seeking declaratory judgment that it does not infringe Plaintiff's trademarks and alleging tortious interference with contract, intentional interference with prospective economic advantage, deceptive and unfair trade practices under Colo. Rev. Stat. § 6-1-105 *et seq.*

On January 20, 2021, Otter filed a Motion for Partial Summary Judgment as to its trademark infringement and unfair competition claims (Counts 1, 3, and 5) and its false

4

advertising and deceptive trade practices claim (Counts 2 and 6).[2] Otter also seeks summary judgment on all of Triplenet's counterclaims.

## II.   LEGAL STANDARD

To succeed on a motion for summary judgment, the movant must demonstrate that (1) there is no genuine dispute of material fact; and (2) the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). When analyzing a motion for summary judgment, the court must look at the factual record and the reasonable inferences to be drawn from the record in the light most favorable to the non-moving party." *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006). However, the nonmoving party may not simply rest upon its pleadings at this stage; rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998).

Ultimately, the Court's inquiry on summary judgment is whether the facts and evidence identified by the parties present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that

---

[2] The Court understands that Otter does not seek summary judgment against Defendant Eric Sypes (ECF 41, p.1 n.1).

party. If the evidence is merely colorable . . . or is not significantly probative, . . . summary judgment may be granted." *Id.* at 249.

### III.   ANALYSIS

### A.  Trademark Infringement and Unfair Competition

Otter's trademark infringement and unfair competition claims are analyzed under the same framework. *Cleary Bldg. Corp. v. David A. Dame, Inc*., 674 F. Supp. 2d 1257, 1269 (D. Colo. 2009) (citing *Utah Lighthouse Ministry v. Found. for Apologetic Info. & Research*, 527 F.3d 1045, 1050 (10th Cir. 2008) ("Courts addressing claims of both trademark infringement and unfair competition, address the claims together because they have virtually identical elements"). To establish a claim for trademark infringement under § 43 of the Lanham Act, Otter must show: (1) its marks are protectable; (2) Defendant used the marks in connection with goods or services; and (3) Defendant's use of the marks is likely to cause customer confusion. *Gennie Shifter, LLC. v. Lokar, Inc*., No. 07-CV-01121, 2010 WL 126181, at *9 (D. Colo. Jan. 12, 2010) (citing *Utah Lighthouse Ministry v. Found. for Apologetic Info.*, 527 F.3d at 1050). "To prevail in an action for unfair competition under § 43(a), a plaintiff must establish that (1) her mark is protectable, and (2) the defendant's use of an identical or similar mark is likely to cause confusion among consumers." *Donchez v. Coors Brewing Co.,* 392 F.3d 1211, 1215 (10th Cir. 2004) (citing *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 638 (7th Cir. 2001)).

The parties do not appear to dispute that Otter can meet the first two elements of its claim. Triplenet instead argues that the third element cannot be satisfied because of

the first sale doctrine, which provides that the resale of genuine trademarked products generally does not constitute trademark infringement. *Beltronics USA, Inc. v. Midwest Inventory Distribution, LLC*, 562 F.3d 1067, 1071 (10th Cir. 2009). Under the first sale doctrine, "the right of a producer to control distribution of its trademarked product does not extend beyond the first sale of the product." *Australian Gold, Inc. v. Hatfield*, 436 F.3d 1228, 1240–41 (10th Cir. 2006).

Courts have recognized two exceptions to the first sale doctrine: a "material difference" exception and a "quality control" exception. Regarding the former exception, a product is not "genuine," and the first sale doctrine therefore does not apply, "when [the] alleged infringer sells trademarked goods that are materially different than those sold by the trademark owner." *Belltronics v. Midwest Inventory*, 562 F. 3d at 1072. The "quality control" exception applies when the alleged infringer "fail[s] to abide by the trademark holder's quality controls when distributing the trademarked goods or… interfere[s] with the trademark holder's ability to control quality." *Id.* (citing *Skullcandy, Inc. v. Filter USA, Inc.*, 2019 WL 2568010, at *5 (D. Utah, June 21, 2021)). Where either exception applies, an alleged infringer is not protected by the first sale doctrine and the alleged infringer's sales are likely to create confusion. *Id.* at *4.

1.  Material Difference Exception

When analyzing the material difference exception, a court must first determine whether the differences between the trademark holder's goods and the unauthorized reseller's goods are material. *See Belltronics v. Midwest Inventory*, 562 F. 3d at 1072–

73. "[A] difference is material if consumers [would] consider [it] relevant to a decision about whether to purchase a product." *Id*. at 1073 (internal citations omitted). The "material difference" exception is not limited to physical differences, but it may also include differences in warranties or service commitments. *Id*; *see also Otter Products, LLC v. Cloudseller, LLC*, No. 19-cv-0630-JLK, *13 (D. Colo. Dec. 3, 2019). Otter has cited to uncontradicted evidence establishing that the products sold by Triplenet are not covered by the Otter Warranty. *See* ECF 42-6, p. 3. Otter has also cited to survey evidence suggesting that more than 85% of respondents reported that they were "much more likely" or "somewhat more likely" to purchase an Otter Product on Amazon if the product included the manufacturer's warranty. *See* 41-18, pp.11-12. Perhaps most importantly, Triplenet does not dispute that the applicability of the Otter Warranty is material. Otter thus argues that it has established the first sale doctrine does not apply, and it is entitled to summary judgement on its infringement and unfair competition claims.

Triplenet's response, while not a model of clarity, does not dispute that a material difference exists where a reseller's product is not covered by manufacturer's warranty. *See* ECF 44, p. 11. Triplenet argues instead that a material difference cannot exist *here* because the Otter Warranty is invalid. Triplenet asks the court to hold that:

> [O]n its face, the [Otter] Warranty actually included with [Otter Products] is invalid based on the following factors: The Warranty appears to be printed in miniscule 3- or 5-point type and is virtually illegible[;] The Warranty is packaged in a sealed box, thus, not being published for pre-purchase inspection and preventing the consumer from knowing what he is purchasing until the purchase is made[;] The boxes containing [Otter Products] make no reference on the outside to the [Otter Warranty] contained within, thus, compelling the consumer to purchase a cat in a bag.

8

*Id.*

Triplenet argues that the Colorado statutes setting forth (a) the implied warranty of merchantability (Colo. Rev. Stat. § 4-2-314) and (b) exclusion or modification of warranties (Colo. Rev. Stat. § 4-2-316) should "kick in and protect the consumer against this deliberate machination by the plaintiff that is really intended to prevent others from entering the marketplace." ECF 44, pp. 11-12. Triplenet has not explained, however, and the Court cannot glean, how either of these statutes is applicable here. The implied warranty of merchantability simply provides that a warranty that goods sold shall be merchantable is implied when a seller is a merchant with respect to the type of goods sold. Likewise, C.R.S. § 4-2-316 instructs what a warrantor must do to exclude the implied warranty of merchantability. Neither statute provides any support for Triplenet's argument. Triplenet does not cite, and the Court is not aware of, any other basis on which the Court could invalidate the Otter Warranty at this time. As such, the Court cannot rule that the Otter Warranty is null and void.

Otter has identified uncontradicted facts establishing trademark infringement and unfair competition. Otter has also established that the first sale doctrine does not apply to Triplenet's actions here because the product offered by Triplenet is materially different than the product sold by Otter. For these reasons, Otter is entitled to summary judgment on its trademark infringement and unfair competition claims (first, third, and fifth causes of action) under the material difference exception to the first sale doctrine.

2.  Quality Control Exception

Even if the material difference exception did not apply, Otter would still be entitled to summary judgment under the quality control exception to the first sale doctrine. "Distribution of a product that does not meet the trademark holder's quality control standards may result in the devaluation of the mark by tarnishing its image. If so, the non-conforming product is deemed for Lanham Act purposes not to be the genuine product of the holder, and its distribution constitutes trademark infringement." *Warner-Lambert Co. v. Northside Dev. Corp.*, 86 F.3d 3, 6 (2d Cir. 1996). To establish the applicability of the quality control exception, Otter must allege that (i) they have established legitimate, substantial, and nonpretextual quality control procedures, (ii) they abide by these procedures, and (iii) the nonconforming sales by Triplenet will diminish the value of Plaintiffs' trademark. *Otter Products, LLC v. Cloudseller, LLC*, No. 19-cv-0630-JLK at *15-16 (citing *Warner-Lambert Co. v. Northside Dev. Corp.*, 86 F.3d at 6.

a.  *Otter has established legitimate, nonpretextual quality control procedures*

Otter has set forth evidence identifying legitimate quality control measures. Otter allows Otter Products to be sold to consumers only by Otter or by Authorized Sellers. Authorized Sellers must agree to follow Otter instructions regarding shipping and handling Otter Products, product inspection, removal of damaged goods, reporting to Otter any product damages or defects, and product display requirements.  ECF 41-2, p. 3. Before any Authorized Seller is permitted to sell on Amazon, they must submit an application, and provide Otter with their full name, business information, history of bankruptcy or

lawsuits, storage protocols, sources of Otter Products, and the specific storefront on which they seek to sell Otter Products. ECF 41, ¶¶ 15-16.

### b. *Otter abides by these quality controls, which are not pretextual*

Otter has produced evidence that it abides by these quality controls, including evidence that it conducts regular reviews of distributor and reseller brick and mortar locations (ECF 41-10, pp. 9-11[3]) and that it requires distributors to provide Otter with sell-through reports to ensure that Otter Products are only sold to Authorized Sellers (*Id.* at 21:4-12). Otter also requires Authorized Sellers to ensure that its Otter Products are not comingled with other Amazon sellers' inventory. ECF 42-4, pp. 4-5. Finally, Otter has produced evidence that it regularly audits its online Authorized Sellers by examining every website and website storefront to confirm compliance with the quality controls, inspecting all reviews of Otter Products, and purchasing Otter Products from every Authorized Seller website to ensure compliance. *See e.g.*, *id.* at 5-6.

Triplenet argues that the quality controls identified by Otter are "purely pretext" and "practically unenforceable." It first argues that "[t]he claim that plaintiff supervises the practices of its numerous wholesale distributors to prevent comingling of inventory is pretext and is practically unenforceable." ECF 44, p. 5. Triplenet does not cite to any evidence in support of this argument. Triplenet then argues that "[t]he claim that plaintiff supervises the practices of Walmart, Best Buy, Target, to wit, in some 40,000 retail

---

[3] "We have field representatives in the field that go to all the Targets. They'd meet with Target, they meet with Best Buy, they meet with Walmart at their physical locations, not at their corporate headquarters. Same with AT&T and Verizon."

locations and numerous warehouses… is pretext and is also practically unenforceable." *Id*. Triplenet cites only to the deposition of Mr. McPherson, in which Mr. McPherson testifies that Otter conducts inspections of the identified businesses (ECF 41-10, pp. 9-11). Triplenet thus has only identified evidence suggesting that Otter actually does conduct the inspections. Triplenet has not identified any evidence that Otter does not or is not able to conduct the inspections as Mr. McPherson testified. Finally, Triplenet argues that "Plaintiff sells products directly to Amazon that are handled, sorted, and stored in Amazon warehouses, but retains no control as it claims to have over its other distributors." In support of this argument, Triplenet cites to Mr. McPherson's testimony that Otter sells directly to Amazon. (ECF 41-10, p. 21). Nothing in the cited testimony establishes that its sales to Amazon render its quality control measures unenforceable.[4]

### c. Nonconforming sales by Triplenet diminish the value of Otter's trademark

Otter has produced evidence establishing that the nonconforming sales by Triplenet diminish the value of Otter's mark by interfering with their ability to ensure that Otter Products sold adhere to Otter's quality standards. *Cf. Skullcandy, Inc. v. Filter USA, Inc.*, 2019 WL 2568010 at *5 ("Skullcandy has alleged that Defendants' interference with

---

[4] Triplenet's Opposition consistently argues that statements made by Mr. McPherson are "not true," but Triplenet does not include citations to any of its own contradictory evidence. Such bald assertions do not create an issue of material fact. A factual dispute is genuine for purposes of summary judgment only if a reasonable jury could find in favor of the nonmoving party on the evidence presented. Fed. R. Civ. P. 56(a). Where a nonmoving party does not offer any evidence, there is not a basis on which a jury could find in its favor.

its quality controls will further diminish the value of the Skullcandy Trademarks because it impedes Skullcandy's ability to ensure that all products bearing those marks adhere to its quality standards."). Otter has produced evidence suggesting that a number of Triplenet's sales of Otter Products were cancelled due to Triplenet's failure to send products or communicate with customers. ECF 41-12.

These uncontradicted facts, taken together, establish that the quality control exception to the first sale rule applies to the claims at issue here. For this reason, Otter is separately entitled to summary judgment on its trademark infringement and its unfair competition claims.

### B. False Advertising

To succeed on its False Advertising claim, claim, Otter must establish:

(1) that defendant made material false or misleading representations of fact in connection with the commercial advertising or promotion of its product; (2) in commerce; (3) that are either likely to cause confusion or mistake as to (a) the origin, association or approval of the product with or by another, or (b) the characteristics of the goods or services; and (4) injure the plaintiff.

*Digital Ally, Inc. v. Util. Assocs., Inc*., 882 F.3d 974, 978 (10th Cir. 2018) (quotation omitted). If the plaintiff shows literal falsity, the third element is presumed established; for statements that are not literally false, the plaintiff must show that they tend to mislead or confuse the relevant market. *See Zoller Labs., LLC v. NBTY, Inc*., 111 Fed.Appx. 978, 982 (10th Cir.2004).

Otter has established that Triplenet made false or misleading statements of fact. Uncontradicted evidence establishes that the Otter Warranty does not cover products

sold by Unauthorized Sellers. ECF 42-6, p. 3. Triplenet admits that it is not an Authorized Seller of Otter Products. ECF 41, ¶ 2. The Otter Warranty therefore does not cover products sold by Triplenet. Triplenet has also admitted, however, that the listing of Otter Products on the Triplenet Amazon website states: "Includes OtterBox limited lifetime warranty…" ECF 1, ¶ 164; ECF 32, ¶ 164. The listings of the Otter Products on the Triplenet Amazon site also identify the products as "New." *Id*. ¶ 165. Pursuant to Amazon's policies, a "New" product listing comes with the "original manufacturer's warranty." *Id*. Because Triplenet represented that its products are covered by the Otter Warranty when those products are, in fact, not covered by the Otter Warranty, Triplenet made literally false or misleading statements.

Because Triplenet made literally false statements, the third element is presumed. Nonetheless, Otter has also identified evidence establishing that these misrepresentations are material by producing survey evidence suggesting that 85% of respondents reported that they were "much more likely" or "somewhat more likely" to purchase an Otter Product on Amazon if the product included the manufacturer's warranty. *See* 41-18, pp. 11-12. Triplenet does not offer any contradictory evidence, nor does it address Otter's expert evidence.

Otter has also established that the misrepresentations cause confusion and harm Otter. Specifically, Otter has produced survey evidence that more than 80% of respondents reported that they would expect an Otter Product purchased on Amazon to have been inspected pursuant to the manufacturer's requirements, to have been handled

according to the manufacturer's quality controls, and to have been shipped according to manufacturer requirements. ECF 41-18. More than half of the respondents indicated that they would leave a negative review for Otter Products if the product arrived damaged or defective. *Id.*

Triplenet has not offered any contradictory evidence suggesting lack of confusion. Instead, Triplenet asks that "if any customer confusion is caused absent [Otter's] so-called controls, any such issues should be determine by a trier of the facts and not ruled upon as a matter of law." ECF 44, p. 7. Because Triplenet has not identified any disputed facts with regard to consumer confusion or harm, however, the Court is properly tasked with determining whether Otter is entitled to judgment as a matter of law on this issue.

The Court finds that no dispute as to any material fact exists, and Otter is entitled to summary judgment as a matter of law on its False Advertising claim.

### C.    Colorado Consumer Protection Act Deceptive Trade Practices

"The [Colorado Consumer Protection Act ("CCPA")] was enacted to regulate commercial activities and practices which, "because of their nature, may prove injurious, offensive, or dangerous to the public." *Peterson v. USAA Life Ins. Co.*, 353 F. Supp. 3d 1099, 1112 (D. Colo. 2018), *aff'd*, 814 F. App'x 408 (10th Cir. 2020). In order to prove a violation of the CCPA, a plaintiff must show: "(1) that the defendant engaged in an unfair or deceptive trade practice; (2) that the challenged practice occurred in the course of defendant's business, vocation, or occupation; (3) that it significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property; (4) that

the plaintiff suffered injury to a legally protected interest; and (5) that the challenged practice caused the plaintiff's injury." *Id.* (citing *Hall v. Walter*, 969 P.2d 224, 235 (Colo. 1998)).

For the reasons previously set forth, Otter has established the first, second, fourth, and fifth elements of its claim. The Court must thus determine whether Otter is entitled to judgment as a matter of law that Triplenet's misrepresentations significantly impact the public. Triplenet has not responded any of Otter's arguments relating to its CCPA claim.

"In order for a plaintiff to prove that a challenged trade practice has a significant impact on the public as actual or potential consumers of the defendant's goods, services, or property, the plaintiff must establish that the wrong is not private in nature." *Peterson v. USAA Life Ins. Co.*, 353 F. Supp. 3d at 1113. When analyzing whether a trade practice has a significant public impact, courts consider "(1) the number of consumers directly affected by the challenged practice, (2) the relative sophistication and bargaining power of the consumers affected by the challenged practice, and (3) evidence that the challenged practice has previously impacted other consumers or has the significant potential to do so in the future." *Id.* In *Hall v. Walter*, the Colorado Supreme Court found that there was "no dispute" that the deceptive practice implicated the public as consumers "because the misrepresentations were directed to the market generally." 969 P.2d at 235.

Here, too, Triplenet's false statements were directed to the market generally, through its Amazon storefront. Such statements are sufficient to establish impact on the public. *See Matthys v. Narconon Fresh Start*, 104 F. Supp. 3d 1191, 1207 (D. Colo.

2015)(claims on website that Defendant treatment facility "had a 76% success rate" and that "[Plaintiff] would receive counseling related to substance abuse at [the facility]" were sufficient to demonstrate a significant public impact under the CCPA); *Hall v. Walter*, 969 p. 2d at 228, 235 (Defendant's advertisements to the general public stating that the Plaintiff's road offered a proper means of access to the lots Defendant sought to sell implicated the public as consumers).

The Court thus finds that Otter is entitled to summary judgment on its CCPA claim.

### D.  Triplenet's Counterclaims

Otter seeks summary judgment on all of Triplenet's counterclaims. Triplenet does not respond to any argument related to its counterclaims.

#### 1.  Declaration That Triplenet Does Not Infringe Otter's Trademarks

Because the Court finds that Otter is entitled to summary judgment on Otter's Trademark infringement claim, the Court also finds that Otter is entitled to summary judgment on Triplenet's counterclaim for declaratory judgment that it does not infringe Otter's trademarks.

#### 2.  Tortious Interference With Contract

"[T]o prove tortious interference with contract, a plaintiff must show: (1) a contract existed; (2) the defendant had knowledge of the contract; (3) the defendant interfered and induced the other party to breach the contract; and (4) the plaintiff was injured as a result." *Phillips v. Carpet Direct Corp.*, No. 16-CV-02438-MEH, 2017 WL 121630, at *13 (D. Colo. Jan. 10, 2017). In its counterclaim, Triplenet alleges that Otter has interfered with

Triplenet's relationship "with whom it maintains its internet storefronts by, amongst other things, sending notice letters to its internet carriers with a frivolous charge of allegedly dealing in and offering counterfeit goods for sale." ECF 32, ¶ 382.

"[A] movant that will not bear the burden of persuasion at trial need not negate the nonmovant's claim…. Such a movant may make its prima facie demonstration simply by pointing out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Adler v. Wal-Mart Stores*, Inc., 144 F.3d 664, 672 (10th Cir. 1998). If the movant makes such a demonstration, the burden shifts to the nonmovant "to go beyond the pleadings and set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Id.* (internal citations omitted).

Otter has produced evidence, through the sworn declaration of Mr. McPherson, that it never reported to Amazon or to any other internet carriers stating that the Defendant sold counterfeit products. ECF 41-1, ¶ 27. Triplenet has not identified any specific facts, supported by admissible evidence, suggesting that Otter actually sent letters to Amazon or any other entity. Triplenet has therefore failed to show that there is any dispute as to a material fact. The Court therefore finds that Otter is entitled to judgment as to Triplenet's second counterclaim as a matter of law.

3. <u>Intentional Interference With Prospective Economic Advantage</u>

Triplenet relies on the same allegations for this third counterclaim as for its second. Specifically, Triplenet alleges that Otter "sent notice letters to [Triplenet's] website

18

operators with a frivolous charge of the latter dealing in counterfeit merchandise" and that these "unfair representations were made by [Otter] for the sole purpose of harming Triplenet's relationship with its website operators and to discourage them from permitting it to maintain a storefront presence for the sale of goods to its customers. Further, Amazon, in view of having received notice letters regarding these false complaints against Triplenet, is threatening to shut down its storefront business and to ban it from its website." ECF 32, ¶¶ 387-388.

As set forth, *supra*, Otter has produced evidence that it never reported to Amazon or to any other internet carriers stating that the Defendant sold counterfeit products. ECF 41-1, ¶ 27. Triplenet has not identified facts contradicting this evidence. Triplenet therefore has not identified any facts that a reasonable jury might rely on to find that Otter induced or otherwise caused a third party to breach a contract or refuse to enter into a contractual relationship with Triplenet. Otter is therefore entitled to summary judgment on this claim. *See Tara Woods Ltd. P'ship v. Fannie Mae*, 731 F. Supp. 2d 1103, 1119 (D. Colo. 2010), aff'd, 566 F. App'x 681 (10th Cir. 2014) (to state a claim for either intentional interference with contractual relations or prospective economic advantage "the Plaintiff must allege: (i) it had either a valid existing contract with a third party or that it expected to enter into a contract with a third party; (ii) the Defendants induced or otherwise caused the third party to breach the contract or not enter into the contractual relation; and (iii) the Defendants did so intentionally and via improper means.")

4. Deceptive And Unfair Trade Practices

As set forth herein, a plaintiff alleging deceptive and unfair trade practices under the CCPA must show: "(1) that the defendant engaged in an unfair or deceptive trade practice; (2) that the challenged practice occurred in the course of defendant's business, vocation, or occupation; (3) that it significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property; (4) that the plaintiff suffered injury to a legally protected interest; and (5) that the challenged practice caused the plaintiff's injury." *Peterson v. USAA Life Ins. Co.*, 353 F. Supp. 3d at 1112 (citing *Hall v. Walter*, 969 P.2d at 235)).

In support of its fourth counterclaim, Triplenet alleges that Otter made the following false statements:

- The Otter products sold by Triplenet do not come with the Otter Warranty
- The Otter Products sold by Triplenet are materially different from genuine Otter Products
- The Otter Products Triplenet advertises and offers for sale are not genuine Otter Products
- Triplenet engages in deceptive and false advertising in an attempt to defraud the public.

ECF 32, ¶ 392. Triplenet also argues that Otter has "engaged in false and misleading representations and omissions of material fact to Triplenet's customers," "disparaged the goods and services and business reputation of Triplenet." *Id.* ¶¶ 393-396.

Triplenet's counterclaim fails as a matter of law. The Court has already found that the allegedly false statements identified by Triplenet in its paragraph 392 are true, they therefore cannot form the basis of Triplenet's CCPA claim. Further, Otter produced

evidence that it has never communicated with any third party, including Triplenet's customers, regarding Triplenet's sales of Otter Products. Triplenet has not identified any evidence to the contrary. Otter is thus entitled to summary judgment on Triplenet's fourth counterclaim.

## IV.    CONCLUSION

For the reasons set forth herein, Otter's Motion for Partial Summary Judgment, ECF 41, is **GRANTED**.

DATED:  November 10, 2021

BY THE COURT:

_____
REGINA M. RODRIGUEZ
United States District Judge