**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:19-cv-00510-RMR-MEH
_____

OTTER PRODUCTS, LLC and
TREEFROG DEVELOPMENTS, INC.,

    Plaintiffs/Counter-Defendants,

v.

TRIPLENET PRICING, INC, et al.,

    Defendants/Counter-Claimant,

    and

TRIPLENET PRICING LLC,
ERIC SYPES, and
JOHN DOES 1-10, individually or as corporate/business entities,

---

**DEFENDANTS' MOTION FOR RECONSIDERATION OF SUMMARY JUDGMENT ORDER**

---

Defendants Triplenet Pricing, Inc. and Triplenet Pricing, LLC (collectively, "Triplenet") move this Court for Reconsideration of the Court's November 10, 2021 Order Granting Plaintiffs Otter Products, LLC and TreeFrog Developments, Inc. (collectively "Plaintiffs") Motion for Partial Summary Judgment. (ECF 54, "SJ Order").

## I. INTRODUCTION

The Court's SJ Order granted a summary judgment with respect to Plaintiffs' claims of trademark infringement, unfair competition, false advertising and the Colorado Consumer Protection Act ("CCPA"). Reconsideration is warranted because (1) Plaintiffs failed to disclose this Court's conflicting order in a co-pending case based on the same facts; (2) Plaintiffs withheld relevant evidence from Triplenet; and (3) the Court made findings on hotly contested factual disputes.

Triplenet is a reseller of original, authentic and unaltered Otter products. Triplenet sells Otter products through the internet, including its online Amazon.com storefront. As indicated in the Declaration of Yisroel Blackman, Triplenet's shareholder, these products are offered as "genuine and authentic Otter products obtained directly from Ingram [Micro]," one of Otter's Authorized Distributors. (ECF 44-1). The simple resale of such products is not a violation of any law; rather it is the basis of free-trade and healthy competition.

Plaintiffs' primary argument is support of its claims is that the "first-sale doctrine" does not apply because Plaintiffs do not honor their warranty ("Otter Warranty") when a product is purchased from an "unauthorized" retailer (i.e., a seller that has not signed a particular reseller agreement). Triplenet challenged this assertion on multiple grounds, including that none of Plaintiffs' packaging contain any notice that Plaintiffs will repudiate their warranty if the product

1

is purchased from an unauthorized seller. (ECF 44-1, Par. 4). The validity of the Otter Warranty and the more elemental question of whether such a warranty is even material to consumers are just a few of the issues that were disputes here. And, as it turns out, these same issues had been the focus of a summary judgment order issued by Judge Ebel in a related case, *Otter Products, LLC, and Treefrog Developments, Inc. v. Big Birds, LLC, et al.*, Case 1:19-cv-00626-DME-KLM ("Big Birds Case"), ("Ebel Order," **Exhibit 1**) just weeks before the SJ Order was issued. Unbelievably, Plaintiffs did not bring the Ebel Order to the Court's or Triplenet's attention, even as the Parties here prepared and filed their Proposed Pretrial Order.

The Ebel Order, considering the same facts and arguments as here, denied summary judgment and concluded that there were factual issues that must be presented to a jury. Had Plaintiffs not intentionally hid the ball, it is respectfully submitted that the outcome herein would have been markedly different. In fact, Judge Ebel's decision essentially identifies a number of issues to be submitted to a jury in the Big Birds action that are also applicable to Triplenet as well. Accordingly, and in light of Judge Ebel's decision, it is respectfully requested that the Court set aside the SJ Order and reconsider it in light of the decision and findings in the Big Birds case.

For the reasons discussed herein, Triplenet respectfully requests that the Court set aside the SJ Order and allow this case to proceed to trial on all of Plaintiffs' claims.

## II.     RECONSIDERATION STANDARD

"The District Court's partial summary judgment ruling was not a final judgment." *Fye v. Oklahoma Corp. Comm'n*, 516 F.3d 1217, 1224 n.2 (10th Cir. 2008). Therefore, the SJ Order is considered "an interlocutory motion invoking the district court's general discretionary authority to review and revise interlocutory rulings prior to entry of final judgment." *Wagoner v. Wagoner*,

938 F.2d 1120, 1122 n.1 (10th Cir.1991).

Grounds warranting a motion to reconsider include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice. *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). Thus, a motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law. *Id.*

### III. THE FACTS AND CIRCUMSTANCES OF BOTH THE TRIPLENET AND BIG BIRDS CASES ARE THE SAME

A comparison of Plaintiffs' Complaint in this case (ECF 1), with that in the Big Birds Case (Ex. 2), shows that they are the same. When compared side by side, these complaints reveal themselves to be boiler plate documents, except for the difference in the respective parties in each case. Likewise, in both cases, Defendants' respective answers and defenses are nearly identical— the affirmative defenses in both these answers critically rely upon the First Sale Doctrine as well as upon the fact that the accused products being sold by the Defendants do not differ in any manner than those sold by Plaintiffs.[1]

Not surprisingly, the Parties' summary judgment arguments mirror each other as well, advancing the same claims and defenses. Nevertheless, the decisions rendered in this case and the Big Birds Case drastically diverge. In fact, the findings are contradictory despite the allegations of the pleadings all of which stem from practically the same set of facts and circumstances and are all basically the same. Accordingly, had the Big Birds decision been brought to the attention of

---

[1] As noted, Triplenet sources and purchases Plaintiffs' products only from Plaintiffs' Authorized Distributor (Ingram MicroTech). Thus, the lineage of Plaintiffs' products as sold by Triplenet is undeniable with a pedigree that is unassailable.

this court, it is respectfully submitted that the outcome of Triplenet would have been significantly different.[2]

## IV. RECONSIDERATION SHOULD BE GRANTED

### a. Whether or Not Triplenet Is Selling "Materially Different" Otter Products Is a Question for a Jury

#### i. Triplenet Asserts that Its Otter Products Are Covered by a Warranty

Plaintiffs' main argument in this case is that the Otter products sold by Triplenet are "materially different" from those sold by Triplenet because those sold by Triplenet do not include the Otter warranty. Triplenet always disputed this contention:

> "Any and ***all subject goods herein sold by defendants***, if any, are genuine, sold in sealed and unopened packages, each ***included with an original warranty issued by the plaintiffs*** or manufacturers, the plaintiffs' suit, thus, being barred the First Sale Doctrine."

(ECF 30 at ¶351). Likewise, in opposition to Otter's motion for summary judgment, Triplenet vehemently disputed the factual basis for Plaintiffs' assertion:

> 18. None of the Otterbox products sold by Ingram have any notification printed on the outside thereof that the warranty is conditional and subject to repudiation by the plaintiff.
>
> 19. No notifications of any kind are given by Ingram to the purchasers of plaintiff's products, either on its invoices or by any other means, that Otter warranty is conditional and subject to withdrawal or repudiation by the plaintiff.

(ECF 44, "Opp'n," at 5). These assertions were supported by documents and testimony, demonstrating that, notwithstanding Plaintiffs' self-serving assertions, all Otter products do in fact

---

[2] When the Triplenet complaint was originally filed by the Plaintiff, and since coming under practically the same set of facts and circumstances as its Big Birds case that had previously been assigned to Judge Ebel, Triplenet should have been designated as being a "related case" and referred to Judge Ebel. Instead, we now have two contradictory opinions arising out of the same set of facts.

4

come with a warranty, irrespective of the retailer. (*See, e.g.*, ECF 44-1 ¶4 ("The Otter products come with an Otter Warranty that is included in each box.")).

In the Big Birds Case, the Parties advanced similar arguments. Indeed, there, Plaintiffs conceded that its warranty argument is mostly wordplay (because it covers the purportedly "unauthorized" product) and, therefore, Judge Ebel found that there would be no consumer confusion as a result:

> Otter describes this [online warranty] process as denying the warranty claim on the unauthorized product and then exercising its discretion to cover it anyway. But Otter acknowledges that the consumer is unaware of any of this and only knows that Otter covered its warranty claim. ***That process would not cause consumer confusion.***

(Ebel Order at 11-12). "Based on this evidence, a reasonable jury could find that, although Otter says its manufacturer's warranty does not cover products purchased from unauthorized sellers, Otter actually covers those unauthorized purchases." (*Id*. at 12).

Triplenet respectfully submits that this Court's SJ Order mistakenly found that "Otter has cited to *uncontradicted evidence* establishing that the products sold by Triplenet are not covered by the Otter Warranty." (SJ Order at 8). This was a disputed fact. As such, as Judge Ebel concluded, ***"[a] <u>jury will have to resolve</u> whether the Otter products [an unauthorized seller] is reselling are actually different from the products Otter sells through its authorized distribution network."*** (Ebel Order at 13).

### ii. Triplenet Disputed the Materiality of the Warranty

A "difference" between products, standing alone, is not sufficient to warrant a finding of infringement—the difference must be "material." "[A] difference is [only] material if 'consumers [would] consider [it] relevant to a decision about whether to purchase a product.'" *Beltronics USA,*

5

*Inc. v. Midwest Inventory Distrib., LLC*, 562 F.3d 1067, 1073 (10th Cir. 2009) (quoting *Davidoff & CIE, S.A. v. PLD Int'l Corp.*, 263 F.3d 1297, 1302 (11th Cir. 2001)).

In this regard, the SJ Order states that Plaintiffs "cited to survey evidence suggesting that more than 85% of respondents reported that they were 'much more likely' or 'somewhat more likely' to purchase an Otter Product on Amazon if the product included the manufacturer's warranty." (SJ Order at 8). But the referenced survey was directed only to whether consumers could distinguish between a product being offered on an Amazon listing by an "authorized" vs. an "unauthorized" reseller, a legally irrelevant question. Specifically, "the unauthorized sale of a trademarked article does not, without more, constitute a Lanham Act violation." *H.L. Hayden Co. of N.Y. v. Siemens Med. Sys., Inc.*, 879 F.2d 1005, 1023 (2d Cir. 1989). Factually, Plaintiffs' expert did not conduct *any survey* on the issue of materiality and did not conduct any survey in connection with *any products sold by Triplenet.* (*See* ECF 41-18, p. 4 ("I could not directly investigate consumer expectations in response to a listing from Triplenet."); *id.* at p. 37-45 (failing to provide any details to participants regarding the warranty)).

The SJ Order asserts that "Triplenet does not dispute that the applicability of the Otter Warranty is material" and "argues instead that a material difference cannot exist here because the Otter Warranty is invalid." (SJ Order at 8). But Triplenet has vigorously disputed the materiality of the warranty from the outset of this litigation, including in its opposition to summary judgment.

Triplenet did not simply "ask the court to hold" that the Otter warranty is invalid, but rather "deny its use as a pretext to overcome the first sale doctrine." (Opp'n at 11). Triplenet alleges that consumers would never see the actual terms of the Otter warranty, which are buried in miniscule print inside of a sealed box. (Opp'n at 11). And, as such, Triplenet contends that the

6

warranty could not be material to consumers at the time of purchase. (*Id.* (Plaintiffs "should be precluded from claiming that the lack thereof is a "material difference" between its product and the same product as sold by [Triplenet].") Triplenet cited the Colorado statutes concerning the implied warranty of merchantability (Colo. Rev. Stat. § 4-2-314) and modification of warranties (Colo. Rev. Stat. § 4-2-316) to illustrate that meaningful warranties must be "conspicuous." (*Id.*). The materiality of the Otter warranty is a factual question for a jury. (Ebel Order at 13 n.10 (noting that "it seems undeniable that materiality would have at least a strong factual component").

In the Bird Birds Case, the defendants, like Triplenet, offered evidence tending to show that the warranty was not material consumers. Like Triplenet, the Big Birds defendants demonstrated that consumers would be unaware of the Otter warranty. (Ebel Order at 11). Judge Ebel acknowledged that "Otter does not identify publicly who is an authorized Otter products seller," "[s]o there is no way for a consumer to know before buying an Otter product on Amazon whether he is buying from an authorized Otter seller." (*Id.*). Coupled with the fact that warranty terms are, as Triplenet asserts, not "conspicuous," a jury could conclude that the alleged warranty is not material.

Here, "Otter has asserted evidence that the existence of a manufacturer's warranty is material, and [Triplenet] has submitted contrary evidence." (*Id.* at 13). "That is sufficient to defeat summary judgment for either party." (*Id.*). Accordingly, this case should proceed to trial on the alleged differences between the relevant products, and the materiality of such differences.

### b. Whether Otter's Alleged Quality Controls Render Triplenet's Products Non-Genuine, Is a Factual Issue for the Jury

The SJ Order found that, "[e]ven if the material difference exception did not apply, Otter would still be entitled to summary judgment under the quality control exception to the first sale

7

doctrine." (SJ Order at 10). In doing so, the Court plainly engaged in fact finding, crediting the evidence offered by Plaintiffs and ignoring the substantial evidence offered by Triplenet. Here too, the Ebel Order reached the opposite conclusion on the same facts and arguments. (Ebel Order 14-21).

To establish the applicability of the quality control exception to the first sale doctrine, Plaintiffs must demonstrate that (i) they have established legitimate, substantial, and nonpretextual quality control procedures, (ii) they abide by these procedures, and (iii) the nonconforming sales by Triplenet will diminish the value of Plaintiffs' trademark. (SJ Order at 10). Triplenet disputed each of these elements (Opp'n at 8-10).

### i. There Are Factual Disputes as to Whether the Alleged Quality Controls are Legitimate, Substantial, and Nonpretextual

Triplenet provided evidence disputing each of these elements (Opp'n at 8-10). With respect to element (i), the Court accepted Plaintiffs' claim that "Authorized Sellers must agree to follow Otter instructions regarding shipping and handling Otter Products, product inspection, removal of damaged goods, reporting to Otter any product damages or defects, and product display requirements," as somehow satisfying each of the three requirements that Plaintiffs' purported quality controls are "legitimate, substantial, and nonpretextual." (SJ Order at 10). But these are distinct requirements, none of which is satisfied here and, at a minimum, are disputed factual issues for the jury. (*See* Ebel Order at 16 (holding that "[w]hether Otter's quality controls at issue here are legitimate, substantial and non-pretextual is a question of fact usually for the jury"); *See Alcon Vision, LLC v. Lens.com, Inc.*, No. 18-CV-407 (NG), 2020 WL 5899879, at *19 (E.D.N.Y. Feb. 28, 2020) ("whether a quality control measure is pretextual is a factual question"), *adopted,* 2020 WL 3989492 (E.D.N.Y. July 15, 2020).

8

In Opposition to summary judgment, Triplenet marched through each of the alleged quality controls and, citing the deposition testimony of Plaintiffs' witness (Kevin McPherson), explained why they were meaningless. For example, Triplenet cited testimony where McPherson admitted that Plaintiffs do not know whether their major resellers—Walmart, Best Buy, Target and Amazon—follow the alleged quality controls. (Opp'n at 8; *see also* ECF 41-10, McPherson Tr. at 9-10 (testifying that Plaintiffs do not inspect how Otter products are stored by Walmart, Best Buy and Target, which comprise over 35,000 stores)). Triplenet also disputed, with evidence, Plaintiffs' purported quality controls with respect to storage and handling (Opp'n at 8), recalls and safety issues (*id.* at 9), relabeling, repackaging and altering products (*id.*). More globally, Triplenet contends that Plaintiffs are using these quality controls "to maintain its pricing and to keep those who would only benefit the consumer totally shut out of the marketplace" (i.e., resellers like Triplenet). (*Id.* at 10).

In the Big Birds Case, Plaintiffs advanced the identical quality control arguments and, likewise, relied upon the testimony of Mr. McPherson. However, Judge Ebel, having "reviewed all of the quality controls Otter submitted to the Court" and relying "on the summary of those quality controls to which Kevin McPherson, Otter's Senior Director of Brand Protection and Corporate Counsel, testified during his deposition," found that "Otter's quality controls are very general and 'hardly set any standard at all.'" (Ebel Order at 16 (citing *Iberia Foods Corp. v. Romeo*, 150 F.3d 298, 306 (3d Cir. 1998)). Judge Ebel recognized that "many of Otter's quality controls are generic statements of industry standards," and it would be up to the jury to consider whether, "as a whole, they are legitimate, substantial quality controls." (Ebel Order at 17).

Judge Ebel concluded that a jury could, just as well, find that the quality controls are not

9

substantial because they do not apply to the vast majority of authorized Otter product sales, just as Triplenet argued here (particularly, with respect to sales to the big retailers). This is because:

> Sixty percent of Otter's cell-phone-case sales, for example, are made to cell phone carriers like Verizon and T-Mobile. Thirty percent of Otter's cell-phone-case sales are to national retailers, like Best Buy, Target, Wal-Mart and Amazon. These larger sellers— the cell phone carriers and the national retailers-sign different contracts with Otter than Otter's smaller sellers. It is not clear what the terms of those agreements with the larger sellers are with regard to compliance with Otter's quality controls. Amazon's first-party sales (that is, when Amazon itself sells the Otter product), which account for ten percent of Otter's cell-phone-case sales, Otter asserts only that it sent its quality control guidelines to Amazon. There is evidence that Otter does not know how Amazon stores store Otter products.

(*Id.*)

With respect to the question of whether Plaintiffs' quality controls were legitimate and pretextual, Judge Ebel was likewise skeptical. Just as Triplenet asserted here, Judge Ebel acknowledged that "Otter only weakly enforces its quality controls against its authorized sellers, but immediately after adopting these quality controls, began sending cease-and-desist letters to and suing unauthorized resellers who resell Otter products on Amazon." (*Id.* at 18). This was "sufficient evidence" to warrant denial of summary judgment.

### ii. There Are Factual Disputes as to Whether Plaintiffs Abide by the Alleged Quality Controls

The Court held that "Otter has produced evidence that it abides by [its] quality controls" and that Triplenet did not identify any evidence in opposition. (SJ Order at 11-12). Respectfully, it appears that the Court fell for Plaintiffs' ruse, which relies on vague definitions to skirt the fact that most of their resellers <u>do not</u> abide by its quality controls. In their moving papers, Plaintiffs argued that their "Authorized Sellers" abide by the alleged quality controls. (*See, e.g.*, ECF 41 at 4 (explaining that "Authorized Sellers" are those resellers that agreed to Plaintiffs' "terms")). The

Court relied on such arguments in the SJ Order. (SJ Order at 11).

But the Court misapprehended a key fact. Plaintiffs' major resellers—Walmart, Best Buy, Target, Amazon—are not "Authorized Resellers." (ECF 41-10, McPherson Tr. 9-10 (testifying that "Target, Wamart, Best Buy would buy from a large distributor, and we go inspect the distributor's warehouses")). They are simply "resellers" who follow their own protocols for storing and handling the products they sell (including Otter products). Plaintiffs produced zero evidence showing that all their resellers—particularly their major resellers—abide by their quality controls and conceded that they have no documentation to establish that the major retailers take any action with respect to the "actual safe handling and care" of Otter products. (*Id.* at 11:17-23). This was Plaintiffs' burden, not Triplenet's. Whether Plaintiffs have visited some retail stores to make sales calls, as the testimony cited by the Court states, tells us nothing about whether the retailers ***abide by the quality controls***—why would they without any contractual obligation? These retailers carry thousands of brands (and dozens of brands of phone cases) and could not possibly structure their protocols for one insignificant vendor.

Considering similar testimony and evidence, Judge Ebel concluded that "Otter only weakly enforces its quality controls," thus, precluding summary judgment:

> Otter requires its approximately 4,900 smaller sellers and five secondary resellers to sign a contract agreeing to follow Otter's quality controls. ***But Otter's larger customers, which account for*** <u>***ninety percent of Otter's cell-phone-case sales***</u>***, are apparently not contractually obligated to follow Otter's quality controls***, or at least there is no evidence indicating that they are so obligated.
>
> As far as enforcing its quality controls, Otter has salespeople who visit the larger retailers and who 'inspected their facilities or at least did a walkthrough.' Once three Otter employees toured one Amazon distribution center in January 2019, but there is evidence that ***Otter is not certain how Amazon stores Otter products.*** … ***Otter further acknowledges that it has not yet inspected most of the premises of its 4,900 smaller sellers to insure compliance with Otter's storage and handling***

11

> *requirements* … There is also evidence that, despite its quality controls precluding repackaging, ***Otter sometimes permits its secondary resellers to repackage Otter products*** shipped to them in bulk.

(Ebel Order at 18-19).

### iii. There Are Factual Disputes as to Whether Triplenet fails to comply or interferes with Plaintiffs' Alleged Quality Controls

Plaintiffs were also required to establish that Triplenet either failed to abide by Plaintiffs' quality controls, or interfered with Plaintiffs' ability to implement its quality controls. *See Skullcandy, Inc. v. Filter USA, Inc.*, No. 2:18-CV-00748-DA, 2019 WL 2568010, at *7 (D. Utah June 21, 2019). Triplenet demonstrated that the proof is in the pudding:

> [D]efendant's Amazon defect rating is far better than any of plaintiff's authorized dealers. In fact, out of 36,585 of all items sold – not limited to Otter products – plaintiff received negative feedback (for whatever reason) from only 57 customers, a rating of .02% in all, thus, surpassing all of plaintiff's authorized sellers.

(ECF 44-1, Blackman Declaration Par. 10; Exhibit 19). The SJ Order does not address this evidence. By contrast, Judge Ebel found that the fact that "Big Birds has a higher customer feedback ranking on Amazon than Otter or its authorized Amazon sellers" (Ebel Order at 20), was sufficient to defeat summary judgment.

Just as in the Big Birds Case, there are factual issues that preclude summary judgement on Plaintiffs' quality control theory.

### c. Plaintiffs' False Advertising Claim Should Proceed to Trial

The SJ Order further granted a summary judgment on Plaintiffs' false advertising claim. But the Court's opinion on this claim relies on many of the disputed factual issues discussed above.

The SJ Order found that "Otter has established that Triplenet made false or misleading statements of fact" because "[u]ncontradicted evidence establishes that the Otter Warranty does

12

not cover products sold by [Triplenet]." (SJ Order at 13-14). Whether a statement is false is a jury question. *Healthpoint, Ltd. v. Stratus Pharms., Inc.*, 273 F. Supp. 2d 871, 889 (W.D. Tex. 2001). Here, "[a]s previously explained, there is a disputed issue of fact as to whether Otter actually honors warranty claims on products sold by unauthorized sellers like [Triplenet]. If so, [Triplenet] did not make a false statement." (Ebel Order at 21).

The Court also found that "Triplenet made literally false or misleading statements" by listing Otter products as "New" because, "[p]ursuant to Amazon's policies, a 'New' product listing comes with the 'original manufacturer's warranty.'" (SJ Order at 14). Here too, the Court engaged in fact finding. Triplenet disputes Plaintiffs' self-serving reading of Amazon's policies. (ECF 44-1, Blackman Declaration Par. 13). Whether Otter products sold by third-parties are properly characterized as "new" or "used" "is a question for the jury to resolve." (Ebel Order at 22).

For the reasons stated above, Triplenet also disputed that Plaintiffs' alleged warranty, even if not available, is material to consumers. The SJ Order credited Plaintiffs' expert, but as discussed Dr. Cowan did not provide any opinions on the materiality of the warranty. The survey respondents were never even told the warranty terms—how could they provide any feedback on its value?

### d. Summary Judgment on Plaintiffs' CCPA Claim Should Have Been Denied for the Same Reasons

The SJ Order relied upon the same fact findings made in connection with Plaintiffs' trademark, unfair competition and false advertising claims in concluding that Triplenet violated that CCPA. "As previously explained, there are genuinely disputed issues of material fact as to whether [Triplenet] made material misrepresentations that the Otter products it was selling were covered by Otter's manufacturer's warranty." (Ebel Order at 23).

13

## V. CONCLUSION

For the foregoing reasons, each Defendant respectfully requests the Court reconsider and vacate the SJ Order, and allow this case to proceed to trial on all of Plaintiffs' claims.

Dated: December 7, 2021							Respectfully submitted,

							/s/
							/S/ SOLOMON E. ANTAR
							*Counsel for Defendants Triplenet, et als*
							Office, Post Office Address & Tel.
							26 Court Street, Suite 1200
							Brooklyn, NY 11242
							T. 718-769-3200
							C. 917-544-5216
							solomon@antarlawfirm.com

14

TO:

William D. Kloss, Jr.
Tyler B. Pensyl
Arryn K. Miner
Vorys, Sater, Seymour and Pease LLP
52 East Gay Street
Columbus, Ohio 43216
Email: wdklossjr@vorys.com
　　　　tbpensyl@vorys.com
　　　　akminer@vorys.com

Martha L. Fitzgerald
Joshua A. Weiss
Brownstein Hyatt Faber Schreck, LLP
410 Seventeenth Street, Suite 2200
Denver, Colorado 80202-4432
Email: mfitzgerald@bhfs.com
　　　　jweiss@bhfs.com

*Counsel for Plaintiffs Otter Products, LLC and TreeFrog Developments, Inc.*

## CERTIFICATION OF CONFERRAL

I do hereby certify that Triplenet made a good faith effort to confer with counsel for Plaintiffs before filing this motion. The undersigned spoke with counsel for Plaintiffs on the phone, on December 6, 2021. Plaintiffs counsel said that Plaintiffs would be opposing this motion.

## PROOF OF SERVICE

I do hereby certify that a true and complete copy of the foregoing motion has been served by me on December 7, 2021, though the court's electronic filing system upon:

William D. Kloss, Jr.
Tyler B. Pensyl
Arryn K. Miner
Vorys, Sater, Seymour and Pease LLP
52 East Gay Street
Columbus, Ohio 43216
Email: wdklossjr@vorys.com
 tbpensyl@vorys.com
 akminer@vorys.com

Martha L. Fitzgerald
Joshua A. Weiss
Brownstein Hyatt Faber Schreck, LLP
410 Seventeenth Street, Suite 2200
Denver, Colorado 80202-4432
Email: mfitzgerald@bhfs.com
 jweiss@bhfs.com

*Counsel for Plaintiffs Otter Products, LLC and TreeFrog Developments, Inc.*

                                                      /s/
/S/ SOLOMON E. ANTAR
Attorney for Defendants